1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TEODORO SEVERIANO ALCARAZ,              No.  2:24-cv-0776 TLN AC P

12                      Plaintiff,

13            v.                               ORDER

14    ADAMS, et al.,

15                      Defendants.

16

17          Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18    without a lawyer.  He has requested leave to proceed without paying the full filing fee for this

19    action, under 28 U.S.C. § 1915.  Plaintiff has submitted a declaration showing that he cannot

20    afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to

21    proceed in forma pauperis is granted.[1]

22          I.      Statutory Screening of Prisoner Complaints

23          The court is required to screen complaints brought by prisoners seeking relief against "a

24    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

---

[1]  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that
are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. § 1914(a).  As
part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust
account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to CDCR requires monthly
payments of twenty percent of the prior month's income to be taken from plaintiff's trust account.
These payments will be taken until the $350 filing fee is paid in full.  See 28 U.S.C. § 1915(b)(2).

1

1 claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

2 Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

3 an indisputably meritless legal theory or factual contentions that are baseless.  Neitzke, 490 U.S.

4 at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an

5 arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

6 In order to avoid dismissal for failure to state a claim a complaint must contain more than

7 "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

8 of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

9 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

10 statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

11 court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

12 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

13 inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

14 considering whether a complaint states a claim, the court must accept the allegations as true,

15 Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

16 favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

17 II.      Factual Allegations of the Complaint

18 The complaint alleges that defendants Casillas, Fears, and Adams violated plaintiff's

19 Eighth and Fourteenth Amendment constitutional rights.  ECF No. 1.  At the time of the events

20 alleged, plaintiff was a 76-year-old inmate with various health issues, who was housed at the

21 California Health Care Facility ("CHCF") in the E5A housing unit.  Id. at 3-5.

22 Plaintiff alleges that on December 19, 2020, defendant Casillas ordered him to move into

23 Covid-19 medical tents, but he refused because these tents were unlivable.  Id. at 5.  When

24 plaintiff refused, defendant Casillas threaten to move Covid-19 positive inmates into plaintiff's

25 E5A housing unit, which had been free of Covid-19.  Id.  On December 22, 2020, defendant

26 Casilla intentionally moved six inmates, who had tested positive for Covid-19, into plaintiff's

27 housing unit.  Id.  None of the six inmates transferred into plaintiff's housing unit were tested

28 before the transfer to ensure they did not have Covid-19.  Id.

2

Plaintiff alleges that defendant Fears unlawfully approved the transfer, even though the "entire prison was on a "no movement status" and "the only inmates that could be moved were for mental health crisis and/or medical emergency issues." Id. (cleaned up). Plaintiff alleges that defendant Fears forged movement documents indicating that these six inmates were being move due to mental health crisis, but this was a lie because plaintiff's housing unit did not have mental health crisis beds, bunks, or rooms, and a psychiatrist and/or psychologist had not approved the transfers, as required. Id. at 6. Plaintiff also alleges that in December 2020 and February 2021, defendant Adams, the Chief Medical Executive Officer, failed to prevent or stem the mixing of Covid-negative inmates with Covid-positive inmates, and refused to implement and intentionally violated the six-foot social distancing protocol for beds and bunks in his housing unit. Id. at 7. The beds in his unit were at most three feet apart. Id. at 8.

Plaintiff asserts that as a result of all three defendants' actions, on December 28, 2020, a Covid-19 outbreak began in his housing unit. Id. at 7. Plaintiff tested positive on January 10, 2021. Id. at 7. Because of his positive Covid-19 diagnoses, he is suffering from long term Covid-19 side effects, such as loss of smell and taste, memory loss, weight loss, stress, continuous fatigue, emotional distress, and depression. Id. at 8, 12. Plaintiff further alleges that he did not receive medical treatment after his diagnosis and to date has received no such treatment for his long-term side effects. Id. at 7-8. Despite his and other inmates' grievances to all three defendants regarding these health and safety risks, none of the defendants have properly resolved them. Id. Additionally, plaintiff complains that CHCF continues to put his life in jeopardy by not requiring staff to test more frequently than every five days. Id.

III.    Claims for Which a Response Will Be Required

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated a claim for relief pursuant to the Eighth Amendment against defendants Casillas, Fears, and Adams for deliberate indifference to plaintiff's health and safety. See Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [Covid-19] poses a substantial risk of serious harm to [prisoners]."). Plaintiff sufficiently alleges that each defendant knew plaintiff was at substantial risk of serious harm of contracting

3

Covid-19, and nonetheless transferred and failed to test inmates before transferring them into his housing unit and failed to implement and enforce Covid-19 safety protocols to minimize the risk of exposure to plaintiff and others, resulting in a Covid-19 outbreak in his housing unit and plaintiff's positive diagnosis.

IV.     Failure to State a Claim

However, the allegations in the complaint are not sufficient to state the following claims against any of the defendants: Eighth Amendment deliberate indifference to plaintiff's health and safety relating to staff testing; Eighth Amendment deliberate indifference to plaintiff's serious medical needs; Fourteenth Amendment equal protection; or Fourteenth Amendment due process.

Regarding the Eighth Amendment claims, plaintiff does not allege *who* is responsible for failing to require more frequent staff testing, nor does he allege that these actions or inactions *resulted* in any harm to him. Plaintiff also does not allege *who* denied him medical care, how they purposefully acted or failed to act to respond to his *serious medical needs*, and how their action or inaction *caused* him any harm.

As for plaintiff's Fourteenth Amendment claims, there is no basis for an equal protection claim because plaintiff has not alleged that any defendant intentionally or purposefully discriminated against plaintiff because of his membership in any protected class. Additionally, there is no due process claim because plaintiff has not identified a property or liberty interest for which he is entitled to and for which he was deprived of.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing an amended complaint.

V.      Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against defendants Casillas, Fears, and Adams on the Eighth Amendment deliberate indifference to his health and safety based on the transfers of positive Covid-19 inmates and violating social**

4

**distancing protocols.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss Eighth Amendment deliberate indifference to plaintiff's health and safety as it relates to staff testing and medical deliberate indifference and Fourteenth Amendment equal protection and due process claims against all defendants.  The court will proceed to immediately serve the complaint and order a response from defendants Casillas, Fears, and Adams.**

**The second option available to plaintiff is to file an amended complaint to fix the problems described in Section IV concerning deliberate indifference with respect to staff testing and his medical needs, equal protection, and due process claims.  If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

VI.      <u>Plain Language Summary of this Order for Party Proceeding Without a Lawyer</u>

Some of the allegations in the complaint state claims against the defendants and some do not.  You have stated claims against Casillas, Fears, and Adams for deliberate indifference to your health and safety with respect to the transfer of positive Covid-19 inmates into your housing unit, and failure to implement and enforce social distancing protocols.  You have not stated claims for deliberate indifference with respect to staff testing, medical deliberate indifference, or equal protection or due process violations against any defendant.

You have a choice to make.  You may either (1) proceed immediately on your deliberate indifference to health and safety claims against Casillas, Fears, and Adams for the transfers and social distancing failures, and voluntarily dismiss the other claims; or (2) try to amend the complaint.  To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief.  <u>See</u> Attachment A.  Pay particular attention to these standards if you choose to file an amended complaint.

VII.      <u>CONCLUSION</u>

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 4) is GRANTED.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

§ 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3.  Plaintiff's does not state deliberate indifference based on staff testing, medical deliberate indifference, equal protection, or due process claims for which relief can be granted against any defendant.

4.  Plaintiff has the option to proceed immediately on his deliberate indifference to plaintiff's health and safety based on the transfers and failure to implement social distancing against defendants Casillas, Fears, and Adams as set forth in Section III above, or to file an amended complaint.

5.  **Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form** notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

6.  If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of plaintiff's deliberate indifference claim based on staff testing, medical deliberate indifference, equal protection, and due process claims.

DATED: January 2, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TEODORO SEVERIANO ALCARAZ,              No.  2:24-cv-0776 TLN AC P

12                 Plaintiff,

13          v.                               NOTICE OF ELECTION

14   ADAMS, et al.,

15                 Defendants.

16
            Check one:

17
     _____ Plaintiff wants to proceed immediately on his deliberate indifference to health and safety
18
            claims based on the transfers and failure to implement and enforce social distancing
19
            against defendants Casillas, Fears, and Adams without amending the complaint.  Plaintiff
20
            understands that by choosing this option, the remaining deliberate indifference based on
21
            staff testing, medical deliberate indifference, equal protection, and due process claims will
22
            be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure
23
            41(a).
24
     _____ Plaintiff wants time to file an amended complaint.
25
     DATED:
26
                                             _____
27                                           Teodoro Severiano Alcaraz
                                             Plaintiff pro se
28

                                                  1

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief.  Pay particular attention to these standards if you choose to file an amended complaint.

I.    Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

II.    Legal Standards Governing Substantive Claims for Relief

A.    Personal Involvement

The civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that *causes* the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

1

1  Cir. 1978) (emphasis added) (citation omitted).  In order to state a claim for relief under section

2  1983, plaintiff must link each named defendant with some affirmative act or omission that

3  demonstrates a violation of plaintiff's federal rights.

4              B.  Eighth Amendment – Conditions of Confinement

5          In order for a prison official to be held liable for alleged unconstitutional conditions of

6  confinement, the prisoner must allege facts that satisfy a two-prong test.  Peralta v. Dillard, 744

7  F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The first

8  prong is an objective prong, which requires that the deprivation be "sufficiently serious."  Lemire

9  v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at

10  834).  In order to be sufficiently serious, the prison official's "act or omission must result in the

11  denial of the 'minimal civilized measure of life's necessities."  Lemire, 726 F.3d at 1074.  The

12  objective prong is not satisfied in cases where prison officials provide prisoners with "adequate

13  shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d

14  726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)).

15  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional

16  violation.  Johnson, 217 F.3d at 732 ("[m]ore modest deprivations can also form the objective

17  basis of a violation, but only if such deprivations are lengthy or ongoing").  Rather, extreme

18  deprivations are required to make out a conditions of confinement claim, and only those

19  deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to

20  form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v.

21  McMillian, 503 U.S. 1, 9 (1992).  The circumstances, nature, and duration of the deprivations are

22  critical in determining whether the conditions complained of are grave enough to form the basis

23  of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.

24          The second prong focuses on the subjective intent of the prison official.  Peralta, 774 F.3d

25  at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837).  The deliberate indifference standard

26  requires a showing that the prison official acted or failed to act despite the prison official's

27  knowledge of a substantial risk of serious harm to the prisoner.  Id. (citing Farmer, 511 U.S. at

28  842); see also Redman v. County. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991).  Mere

2

negligence on the part of the prison official is not sufficient to establish liability.  Farmer, 511 U.S. at 835.

C.   Eighth Amendment - Deliberate Indifference to Medical Needs

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id., citing Estelle, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."  Farmer, 511 U.S. at 837.  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  Id. at 839.  A showing of merely negligent medical care is not enough to establish a constitutional violation.  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.  A difference of opinion

3

1    about the proper course of treatment is not deliberate indifference, nor does a dispute between a

2    prisoner and prison officials over the necessity for or extent of medical treatment amount to a

3    constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004);

4    Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, mere delay of medical

5    treatment, "without more, is insufficient to state a claim of deliberate medical indifference."

6    Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Where a

7    prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must

8    show that the delay caused "significant harm and that Defendants should have known this to be

9    the case."  Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

10                   D.  Fourteenth Amendment - Equal Protection Clause

11          The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

12   similarly situated people equally.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

13   (1985) (citation omitted).  "To state a claim for violation of the Equal Protection Clause, a

14   plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

15   based upon his membership in a protected class."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th

16   Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a

17   plaintiff may state an equal protection claim if he shows similarly situated individuals were

18   intentionally treated differently without a rational relationship to a legitimate government

19   purpose.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

20                   E.  Fourteenth Amendment - Due Process Clause

21          The Fourteenth Amendment prohibits the state deprivation of life, liberty, or property

22   without due process of law.  U.S. Const. amend. XIV, § 1.  To warrant protection under this

23   clause, a plaintiff must establish that their life, liberty, or property interest is at stake.  Tellis v.

24   Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).  In the prison context, a protected liberty interest

25   may arise from the Constitution itself or from state policies and regulations.  Sandin v. Conner,

26   515 U.S. 472, 484 (1995).  Where a liberty interest is created by state policies or regulations, it is

27   "generally limited to freedom from restraint which . . . imposes atypical and significant hardship

28   on the inmate in relations to the ordinary incidents of prison life."  Id.

                                            4